UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JODI DUVAL,<br><br>    Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>    Defendant. | Case No. 22-cv-02338-TSH<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION AND FOR STAY PENDING COMPLETION OF ARBITRATION**<br><br>Re: Dkt. No. 42 |

## I.   INTRODUCTION

Pending before the Court is Costco Wholesale Corporation's ("Costco") Motion to Compel Arbitration and for Stay Pending Completion of Arbitration. ECF No. 42. Plaintiff Jodi Duval filed opposition (ECF No. 45) and Costco filed a Reply (ECF No. 46). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** the motion for the following reasons.[1]

## II.   BACKGROUND

Plaintiff Jodi Duval filed this lawsuit against Costco, Kurt "Doe," and Does 1-25, alleging negligence and premises liability based on a slip-and-fall at a Costco store. *See* ECF No. 42-2 (Complaint). On April 14, 2022, the proceeding was removed to federal court. ECF No. 1.

On March 30, 2023, Costco filed the instant Motion to Compel Arbitration. ECF No. 42. Duval failed to timely file opposition pursuant to California Northern District Local Rule 7-3, and on March 30, 2023, this Court ordered Duval to show cause as to why the case should not be compelled to arbitration. ECF No. 44. On April 25, 2023, Duval filed a response to the Court's

---

[1] The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF No. 26.

order. ECF No. 45. On May 2, 2023, the Costco filed a reply. ECF No. 46.

According to Plaintiff's testimony in her February 10, 2023 deposition, she was at Costco at the time of the incident picking up items as part of an Instacart assignment. *See* ECF No. 42-3 122:23-123:7. Instacart is a technology company through which customers can purchase consumer goods from retail partners and arrange for personal shoppers to deliver the goods. *See* ECF No. 42-5 ¶¶ 3-4. Instacart hires independent contractors who provide personal shopping to customers. *Id.* ¶ 4. Costco is a retail partner of Instacart. *Id.* ¶ 3.

Costco has proffered a copy of an "Independent Contractor Agreement" that it says Duval agreed to as part of the process of becoming an Instacart employee. ECF Nos. 42-5, 42-6 (the "Agreement"). The Agreement contains an arbitration clause wherein the parties agreed to final and binding arbitration by a neutral arbitrator for "any and all disputes and claims between you and any third party retailer arising out of or related to the Services performed under this Agreement." *Id.* ¶ 8.1, 8.3. According to the terms of the Agreement, the arbitration is to be administrated under JAMS procedures, and the Agreement is governed by the Federal Arbitration Act ("FAA"). *Id.* ¶ 8.1, 8.7.

The last page of the Agreement states that "by virtue of signing this Agreement you acknowledge that you have carefully read this Agreement, that you understand its terms including the Arbitration Provision, and that you enter into this Agreement voluntarily. You agree to sign this Agreement electronically and that your signature below is valid." *Id.* at 6. Under this acknowledgment, Plaintiff's name follows. *Id.* at 7.

### III. LEGAL STANDARD

As an initial matter, Plaintiff argues that the Federal Arbitration Act ("FAA") is not the applicable law. ECF No. 45 at 7. The Court finds the FAA governs here. The FAA applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has interpreted "involving commerce" "as the functional equivalent of the more familiar term 'affecting commerce' -- words of art that ordinarily signals the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam). "[E]ven if the particular economic transactions in which the parties have engaged are not

in interstate commerce, the FAA applies 'if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control. Only that general practice need bear on interstate commerce in a substantial way.'" *Kin Wah Kung v. Experian Info. Sols., Inc.*, No. C 18-00452 WHA, 2018 WL 2021495, at *2 (N.D. Cal. May 1, 2018) (quoting *Citizens Bank*, 539 U.S. at 56-57).

Instacart is Delaware corporation, Plaintiff is a California resident, and the relevant contract addresses shopping for goods in third-party retailers, such as Costco, a Washington corporation. *See* ECF Nos. 42-2 ¶¶ 1-2, 42-5 ¶ 3. *See also Sanchez v. Gruma Corp.*, No. 19-CV-00794-WHO, 2019 WL 1545186, at *3 (N.D. Cal. Apr. 9, 2019) (finding FAA applies where defendant was incorporated in Nevada, plaintiff was a resident of California and hired to perform work in California, and broader company work was international). Further, Instacart is a technology company and the services provided by Plaintiff to customers involve a virtual marketplace through a smartphone application or website. *See United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[A]s both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate commerce."); *Hofer v. Emley*, No. 19-CV-02205-JSC, 2019 WL 4575389, at *12 (N.D. Cal. Sept. 20, 2019) (finding agreement affected interstate commerce and the FAA applied because plaintiff had to access the internet using his smartphone in order to engage with the company); *S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1042 (S.D. Cal. 2021) (finding that contract affected interstate commerce because it related to company's services and use of those services "require[d] use of the Internet, the Agreement would involve interstate commerce."). Finally, the Agreement expressly states that the FAA applies. *See Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233, 1238 (N.D. Cal. 2019) (applying the FAA where interstate commerce was involved and the contract stated the FAA governed).

Under the FAA, courts are required to enforce contractual arbitration agreements except "upon such grounds as exist at law or in equity for the revocation of any contract." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1616 (2018). The FAA "reflect[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T*

3

1    *Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and internal quotations omitted).
2    The Court's role is to decide: "(1) whether there is an agreement to arbitrate between the parties;
3    and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130
4    (9th Cir. 2015). "If the response is affirmative on both counts, then the Act requires the court to
5    enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic*
6    *Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[A]ny doubts concerning the scope of arbitrable
7    issues should be resolved in favor of arbitration." *Id.* at 1131.

### IV.   DISCUSSION

#### A.   Contract Formation

Plaintiff argues that there was no agreement to arbitrate because Costco has failed to authenticate her signature and the Agreement is unconscionable. *See* ECF No. 45. Plaintiff does not otherwise contend that her claims are outside the scope of the arbitration clause of the Agreement.

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In California, "[a] party petitioning the court to compel arbitration bears the burden of proving by a preponderance of evidence the existence of an arbitration agreement." *Olvera v. El Pollo Loco, Inc.*, 173 Cal. App. 4th 447, 453 (2009) (citation omitted), *abrogated on other grounds by AT&T Mobility LLC*, 563 U.S. at 339. Because "arbitration is a matter of contract," the FAA cannot require a party "to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Under California law, a contract requires (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) consideration. Cal. Civ. Code § 1550.

#### 1.   Authentication of the Agreement

Duval argues that Costco has not sufficiently authenticated the Agreement, in particular Duval's signature. ECF No. 45 at 7-12. Costco argues it has met its burden. ECF No. 46 at 2-11.

"Authentication of a writing means (a) the introduction of evidence sufficient to sustain a

4

finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 843 (2014). A defendant may meet its "initial burden to show an agreement to arbitrate by attaching to their petition a copy of the purported arbitration agreement purportedly bearing [plaintiff's] electronic signature. Once [plaintiff] challenge[s] the validity of that signature in his opposition, defendants [are] then required to establish by a preponderance of the evidence that the signature [is] authentic." *Espejo v. S. California Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016). "The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code § 1633.9(a). The "burden of authenticating an electronic signature is not great." *Ruiz*, 232 Cal. App. 4th at 844.

    The Court finds that Costco has met the relatively low threshold to authenticate Duval's signature. Jerica Sunga attests that she is the Litigation Operations Lead for Instacart, that she has personal knowledge of the matters set forth in her declaration, and that the relevant documents are maintained in the regular course of Instacart's business. ECF No. 42-5 ¶ 2. She attests that prospective Instacart shoppers follow a sign-up process on Instacart's website, download the Instacart shopper application and sign paperwork, including the Agreement, a privacy policy, and a W-9. *Id.* ¶ 5. She attests that Duval completed the sign-up process and signed the relevant documents on September 1, 2019. *Id.* ¶ 6. Notably, the W-9 form requires personal information, such as Duval's social security number. *See* ECF No. 42-6 at 10. *See also Gonzalez v. Ceva Logistics U.S., Inc.*, No. 16-CV-04282-WHO, 2016 WL 6427866, at *3-4 (N.D. Cal. Oct. 31, 2016) (finding the fact that the application process "required applicants to fill out detailed personal information that only the applicant would know" was sufficient to show that no one else could have completed the agreement); *De La Vega v. Sterling Jewelers Inc.*, No. SACV17440JVSKESX, 2017 WL 10605190, at *4 (C.D. Cal. July 7, 2017) (finding relevant in authenticating signature on arbitration agreement that "[o]ther portions of the job application requested De La Vega's personal information, such as address, telephone number, social security number, work history, educational background, and emergency contacts."). Further, the "audit

5

trail" provided to the Court with the Agreement shows the same phone number and IP address accessing and signing the W-9 form, privacy policy, and Agreement within one minute of each other. *See* ECF No. 42-6 at 14; *Taft v. Henley Enterprises, Inc.*, No. SACV151658JLSJCGX, 2016 WL 9448485, at *3 (C.D. Cal. Mar. 2, 2016) ("An audit trail documents the steps that Taft took in her onboarding process in reverse chronological order, and it demonstrates that she electronically reviewed and signed the arbitration agreement on September 4, 2014."). Based on this circumstantial evidence and the relatively light burden, the Court finds Plaintiff's signature sufficiently authenticated.

Further, Duval does not actually state that she never signed the Agreement. Duval declares that she does not recall ever being presented with the exhibits presented with Costco's motion, which would include the Agreement. *See* ECF No. 45-1 ¶ 7. Duval also states that she would never have agreed to arbitration with Costco. *Id.* ¶ 8. However, most of Duval's other statements fail to address the relevant issue – whether she signed the Agreement with Instacart. Her statement that she never signed any paperwork with Costco, for example, is not an attestation that she never signed the Agreement. *Id.* ¶ 3. Duval does not contest that the phone number provided in the audit trail is hers. Without more specific facts from Duval, there is not a sufficient dispute as to the authenticity of the signature. *See Taft*, 2016 WL 9448485 at *4 (finding plaintiff's declaration that she does not remember signing the agreement, without more, fails to adequately rebut defendant's evidence).

Plaintiff's reliance on *Iyere v. Wise Auto Group*, is misplaced, as that case supports that a plaintiff's failure to remember providing an electronic signature is sufficient to shift the burden to defendant to authenticate the signature by a preponderance of evidence. 87 Cal. App. 5th 747, 757 (2023), *review denied* (Apr. 26, 2023). *Gamboa v. Ne. Cmty. Clinic*, similarly, discusses burden-shifting when a plaintiff comes forward with facts contesting the arbitration agreement. 72 Cal. App. 5th 158 (2021). To the extent Plaintiff cites *Gamboa*, and argues that the declaration of Jerica Sunga is insufficient, Plaintiff does not actually provide any objections upon which the Court may rule. Plaintiff states she has lodged numerous objections in an "Objection to evidence," however, no such document was filed with the Court. *See* ECF No. 45 at 9-10.

1  Finally, the case *Bannister v. Marinidence Opco, LLC*, is distinguishable, as there plaintiff
2  presented evidence specifically refuting that she signed the arbitration agreement, describing a
3  scenario where a human resources employee filled out plaintiff's information as part of the
4  onboarding process but never actually showed plaintiff the computer nor provided copies of any of
5  the documents completed. 64 Cal. App. 5th 541, 546 (2021), *as modified* (May 21, 2021). Again,
6  Plaintiff fails to attest that she did not sign the Agreement or provide other evidence from which
7  the Court can understand a specific factual dispute to exist. As such, the Court finds Costco has
8  met its burden to authenticate the Agreement.

### 2. Unconscionability of the Agreement

Plaintiff argues that the arbitration provision in the independent contractor agreement is unconscionable because "click" agreements are disfavored and unconscionable. ECF No. 45 at 13-15. Defendant argues that the agreement is not "clickwrap" in nature. ECF No. 46 at 12-13.

"Unconscionability refers to 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (Cal. Ct. App. 1982)). "Because unconscionability is a generally applicable defense to contracts, California courts may refuse to enforce an unconscionable arbitration agreement." *Id.*; *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1328-29 (1999). The party seeking to establish an unconscionability defense must do so by a preponderance of the evidence. *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1468 (2013), *as modified* (Oct. 2, 2013); *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 173 (2015).

The Court finds Plaintiff's arguments unavailing and inapplicable, and that she has therefore failed to meet her burden. Plaintiff argues that courts have been hostile to "browsewrap" agreements. ECF No. 45 at 14. She also argues that the "Uber Defendants" have presented a "clickwrap" adhesion contract. *Id.* "A '*browsewrap*' agreement is one in which an internet user accepts a website's terms of use merely by browsing the site. A '*clickwrap*' agreement is one in which an internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept'

button, with a link to the agreement readily available." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021), *reh'g denied* (Jan. 18, 2022), *review denied* (Apr. 13, 2022) (emphasis in original). There are no particular allegations or facts indicating that the Agreement is a clickwrap or browsewrap agreement. Plaintiff's reference to "Uber" in this section of her opposition suggests she is referring to another agreement and another proceeding entirely. Under the circumstances, the Court finds Plaintiff has not met her burden to establish that the Agreement in this matter is unconscionable.

## V.  CONCLUSION

The motion to compel is **GRANTED** and this action is **STAYED** pending arbitration of all claims determined by an arbitrator to be subject to the parties' arbitration agreement. The parties are directed to provide the Court with joint status updates on the arbitration proceedings every 90 days from the date of this order.

**IT IS SO ORDERED.**

Dated: June 5, 2023

THOMAS S. HIXSON
United States Magistrate Judge